Josephine MARRICONE

v.

UNITED STATES of America.

Civ. A. No. 86–4218.

United States District Court,
E.D. Pennsylvania.

Sept. 30, 1988.

Kenneth M. Rodgers, Philadelphia, Pa., for plaintiff.

Melissa Satterwhite, Andrea W. McCarthy, Torts Branch, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Josephine Marricone, personal representative and administratrix of the estate of her son, Anthony Marricone, Jr., filed an action against the United States, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, in connection with the death of her son during his incarceration at the Federal Correctional Institute ("FCI") in Lexington, Kentucky. Plaintiff has set forth both wrongful death and survival claims under Kentucky law. Pursuant to this Court's Order of March 31, 1988, plaintiff was permitted to amend her Complaint to name as beneficiaries of the wrongful death action the two putative illegitimate minor children of the decedent. The government has filed a motion to dismiss the wrongful death cause of action on the ground that this Court lacks subject matter jurisdiction over the wrongful death claim because no administrative claim was ever filed with the relevant federal agency by or on behalf of the two allegedly illegitimate children. For the reasons stated, this Court will deny the government's motion.

I.

On March 1, 1985, Anthony Marricone, Jr. reported to the FCI at Lexington, Kentucky. The following day, March 2, 1985, Mr. Marricone was transferred to the Emergency Room of St. Joseph's Hospital, Lexington, Kentucky, where he died from a massive myocardial infarction. Mr. Marricone died intestate and was never married. Neither at the time of his death nor at any time since has a judicial determination of the paternity of Sandra and Sharon Marricone, the alleged illegitimate daughters of Mr. Marricone, been made. On September 22, 1985, the Registrar of Wills of Philadelphia County issued letters of administration for the estate of Mr. Marricone to his mother, plaintiff Josephine Marricone.

In late November 1985, plaintiff filed a survival claim, on behalf of the estate of her son, with the Bureau of Prisons. The administrative claim, which contained a full narrative of the facts upon which plaintiff based her claim as well as a demand for a sum specific, was denied by letter dated April 13, 1986. The letter stated in relevant part:

We have reviewed your client's claims along with reports from appropriate staff members. In accordance with the Federal Tort Claims Act, 28 U.S.C. § 2672, we can find no negligence on the part of the government, therefore, your client's claim must be denied.

Subsequently, on November 19, 1986, plaintiff filed a Form 95 claim for wrongful death with the Bureau of Prisons in which she again set forth the facts upon which the claim was based and requested $1,000,-000 in damages. In her opposition to the instant motion, plaintiff states that although she believed that Sandra and Sharon Marricone were the daughters of her son, in view of the fact that no judicial determination of that fact had ever been made, she filed the administrative claim without mentioning the two alleged illegitimate minor children.

Plaintiff filed the FTCA action on July 16, 1986, and lacking any documentation or judicial determination of the paternity of the two children, brought the wrongful death action as personal representative and sole survivor. During the past two years, the government has filed three separate motions designed to prevent plaintiff from litigating, pursuant to the FTCA, the death of her son despite the fact that the Bureau of Prisons, having been notified of the circumstances of the accident and the damages sought, denied plaintiff's administrative claims.

First, the government moved to dismiss the wrongful death cause of action on the ground that because plaintiff was not authorized under Kentucky law to bring an administrative claim for wrongful death

(because she had been appointed administratrix in Pennsylvania as opposed to Kentucky), she failed to exhaust her administrative remedies before commencing the FTCA lawsuit. By Order dated March 12, 1987, this Court denied the government's motion to dismiss plaintiff's wrongful death claim, holding that plaintiff had properly exhausted her administrative remedies by presenting the wrongful death claim to the Bureau of Prisons. Furthermore, in an Order dated March 31, 1988, this Court denied the government's motion for partial summary judgment as to the wrongful death claim, holding that the plaintiff, as the duly authorized personal representative of decedent's estate, was statutorily authorized to maintain the wrongful death action. In its latest motion, the government claims that because no wrongful death administrative claim was ever filed by or on behalf of the alleged illegitimate minor children of decedent, this Court lacks jurisdiction over an FTCA action in which the two children are identified as potential beneficiaries of any recovery.

## II.

In tort suits against the United States, the jurisdiction of the federal courts is limited by 28 U.S.C. § 2675(a) which provides in pertinent part:

An action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate federal agency.

Pursuant to the rulemaking authority conferred in 28 U.S.C. § 2672, the Attorney General promulgated regulations governing the processing of administrative claims. The relevant regulation provides:

A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable state law.

28 C.F.R. § 14.3(c).

The purpose behind requiring the filing of an administrative claim prior to seeking resolution of the issue in federal court was summarized by Judge Gibbons in *Tucker v. United States Postal Service:*

The relevant legislative history indicates two congressional purposes in requiring claimants to provide the relevant agency with notice of their claims. First ... Congress sought to ease court congestion and avoid unnecessary litigation, while making it possible for the government to expedite the fair settlement of tort claims asserted against the United States ... This efficiency purpose, however, accompanies a second purpose of providing for more fair and equitable treatment of private individuals and claimants when they deal with the government or are involved in litigation with their government.

676 F.2d 954, 958 (3d Cir.1982) *quoting Adams v. United States,* 615 F.2d 284, 289 (5th Cir.1980). Because the purpose of § 2675 is to inform the relevant agency of the circumstances of the accident so that it may investigate the claim and fairly respond by settlement or by defense, the notice requirment is met "if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Tucker v. United States Postal Service,* 676 F.2d at 959. Any additional requirements imposed by administrative regulations are not a bar to jurisdiction by the federal courts. *Id.; see also Avila v. I.N.S.,* 731 F.2d 616, 619 (9th Cir.1984); *Young v. United States,* 372 F.Supp. 736, 741–42 (S.D.Ga.1974).

## III.

The government's pending motion to dismiss is predicated on the incorrect assumption that the administrative claim filed by plaintiff with the Bureau of Prisons should have identified the two alleged illegitimate minor children of the decedent. As this Court noted in its Memorandum of March 31, 1988, under Kentucky law, only the personal representative of the deceased is empowered to bring a wrongful death action. *See* K.R.S. 411.130(1); *Wheeler v. Hartford Accident & Indem. Co.,* 560 S.W.2d 816, 819 (Ky.1978); *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 641–42 (6th

Cir.1986). Accordingly, pursuant to government regulation, the alleged illegitimate minor children of the decedent were not empowered to file an administrative claim with the Bureau of Prisons. *See* 28 C.F.R. § 14.3(c). While it remains conceivable that the two children might be able to establish their legal entitlement to any recovery under the wrongful death action, a point recognized by plaintiff's amended complaint, plaintiff was and presently remains the only legal claimant. Accordingly, pursuant to 28 U.S.C. § 2675(a), this Court enjoys subject matter jurisdiction over the wrongful death action inasmuch as plaintiff properly filed an administrative claim prior to the prosecution of the instant litigation.

More importantly, however, it is unfortunate that the government seems unable to understand that, irrespective of the eventual determination of the status of the two children and their possible right of recovery, the underlying purpose of the administrative claim process has been fully realized. As previously stated, Judge Gibbons identified the primary purpose behind requiring claimants to provide the relevant agency with notice of their claim:

> The purpose of this notice is ... * * * to protect the (government) from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit.

*Tucker v. United States Postal Service,* 676 F.2d at 958 *quoting Adams v. United States,* 615 F.2d at 290. In the instant case, plaintiff's administrative claim to the Bureau of Prisons provided the government with sufficient information concerning both the circumstances of the incident and the alleged value of the claim to permit both a full investigation and exploration of settlement by government. Indeed, based upon the information submitted by plaintiff in the administrative claim, the government, after full investigation, denied the claim and stated that "we can find no negligence on the part of the government."

The government cannot reasonably claim that it is prejudiced from the fact that the plaintiff, at the time she filed the administrative claim, failed to identify the two alleged illegitimate minor children of decedent as potential beneficiaries of a wrongful death action. Obviously, the addition of the two children as possible beneficiaries in the instant action does not alter the circumstances of decedent's death. The government's conclusion that it was not negligent was not arrived at as a result of the number of potential beneficiaries in the wrongful death action. Moreover, the addition of the two children has no impact whatsoever on the damages exposure of the government in the wrongful death action.

In a majority of jurisdictions, damages in wrongful death actions are assessed in accordance with the loss to decedent's survivors. Under such "loss to survivors" wrongful death statutes:

> Damages are awarded for the present value of probable contributions which the deceased would have made to the survivors had he lived, and for the pecuniary value of the services decedent would have rendered to the survivors, which, in many states, includes the value of a parent's training, guidance, nurture and education.

Speiser, *Recovery for Wrongful Death 2d,* § 3.1 at 112. However, in a minority of jurisdictions, damages for wrongful death are measured by loss to the decedent's estate and not to the statutory survivors under the applicable wrongful death statute.

Clearly, in jurisdictions which assess damages in wrongful death actions by loss to decedent's survivors designated in the wrongful death statute, the number and nature of decedent's survivors will determine the amount of damages recoverable. Equally clear, however, is that in jurisdictions which assess damages in wrongful death actions by loss to the decedent's estate, the existence and number of survivors has no bearing on the amount of damages recoverable. Thus, while a defendant in the "loss to survivors" jurisdiction would require knowledge of all survivors designated in the wrongful death statute in calculating its damages exposure, a defendant

in a "loss to estate" jurisdiction can calculate its damages exposure without knowledge of all or, indeed, any survivors.

The Kentucky Wrongful Death Statute mandates that damages are measured by the loss to the decedent's estate in all death actions:

> Most wrongful death statutes provide that damages are to be assessed in accordance with the loss to the surviving beneficiaries. Ours is one of the so-called "true" wrongful death statutes which have been construed to measure damages by loss to the decedent's estate.

*Empire Metal Corporation v. Wohlwender*, 445 S.W.2d 685, 687 (Ky.1969); *see also Phelps Roofing Co. v. Johnson*, 368 S.W.2d 320 (Ky.1963); *Amerco Marketing Co. of Memphis, Inc. v. Myers*, 494 F.2d 904, 913 (6th Cir.1974). Thus, the damages exposure of the government in the instant case remains precisely the same irrespective of whether the two alleged illegitimate minor children of decedent are determined to be surviving beneficiaries of decedent.

Accordingly, there is absolutely no reason to believe and the government cannot reasonably maintain that its ability to investigate or its posture toward settlement or preparation of a defense would have been different had the original administrative claim filed by plaintiff referenced the two children as potential beneficiaries of any wrongful death recovery. We note that the cases cited by the government in support of its motion to dismiss involve situations where the addition of new "claimants" either create a new cause of action which the government would be required to defend or, under the applicable state law, increases the damages exposure of the government. *See e.g., Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11 (3d Cir.1975); *Manko v. United States*, 830 F.2d 831 (8th Cir.1987); *Rucker v. United States Dept. of Labor*, 798 F.2d 891 (6th Cir.1986). In marked contrast, the addition of the two children to the instant wrongful death action neither creates any new causes of action nor increases the damages exposure of the government. Thus, the

first purpose behind requiring claimants to provide the relevant agency with notice of their claims, to wit, to permit investigation and facilitate settlement, was fully achieved by plaintiff's administrative claim to the Bureau of Prisons. The amended Complaint identifying the two alleged illegitimate minor children of decedent as potential beneficiaries in no way undercuts this purpose.

It is clear, however, that granting defendant's motion to dismiss would run directly counter to the second purpose behind requiring claimants to provide the relevant agency with notice of their claim. As previously stated, Judge Gibbons, in *Tucker v. United States Postal Service*, recognized that the notice requirement was intended to benefit the public by "providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." 676 F.2d at 958 quoting *Adams v. United States*, 615 F.2d at 289.

In the instant case, plaintiff, the only person authorized under Kentucky law to bring a wrongful death action, filed an administrative claim with the Bureau of Prisons in which she provided all required information. Her desire to protect the potential right of recovery of the two alleged illegitimate minor children of decedent by listing them as beneficiaries in her Amended Complaint should be applauded. We cannot believe and the government has failed to provide any support for the proposition that it was the intent of Congress that § 2675(a) be used to extinguish the recovery rights of the two minor children under the unique circumstances of this case. Indeed, such a result would ignore the consistent line of case law liberally construing and applying § 2675(a) when the rights of minors are involved. *See e.g., Stokes v. United States*, 444 F.2d 69 (4th Cir.), *cert. denied*, 404 U.S. 1002, 92 S.Ct. 571, 30 L.Ed.2d 555 (1971); *Young v. United States*, 372 F.Supp. 736 (S.D.Ga.1974); *DeGroot v. United States*, 384 F.Supp. 1178 (N.D.Iowa 1974); *Locke v. United States*, 351 F.Supp. 185 (D.Hawaii 1972).

## IV.

It is well established that the enactment of the FTCA was intended to accord injured parties an opportunity for recovery as a "matter of right" and was not intended to "put up a barrier of technicalities to defeat their claims." *Lopez v. United States,* 758 F.2d 806, 809 (1st Cir.1985). Moreover, "Section 2675 was meant to expedite the fair handling of tort cases ..." *Tucker v. United States Postal Service,* 676 F.2d at 859 *quoting Adams v. United States,* 615 F.2d at 290–91. To grant the government's motion to dismiss, the latest in a series of attempts to prevent plaintiff from litigating her claim against the United States, would be in direct contravention of Congress' intent to expedite tort claims.

Accordingly, for the reasons stated, this Court will deny the government's motion to dismiss.